UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DAT TAN TRIEU,

                Plaintiff,

-against-

EXTRA PACE ASSOCIATES, LP, et al.,

                Defendants.

23-CV-6182 (LTS)

ORDER OF DISMISSAL

---

LAURA TAYLOR SWAIN, Chief United States District Judge:

      Plaintiff, who is appearing *pro se*, brings this action invoking the court's federal question jurisdiction and asserting claims under 10 U.S.C. § 921-Art. 121, a provision of the Uniform Code of Military Justice ("UCMJ") concerning larceny and wrongful appropriation.[1] Plaintiff brings claims arising from a dispute concerning the tenancy of an apartment located in Manhattan. By order dated August 7, 2023, the Court granted Plaintiff's request to proceed *in forma pauperis* ("IFP"), that is, without prepayment of fees. For the reasons set forth below, the Court dismisses this action.

---

[1] Plaintiff's complaint and motion for summary judgment (ECF 1, 4) reveal the full names, birth dates, and other identifying information about his two minor children. In addition, his IFP application (ECF 2) contains his full social security number. Rule 5.2(a) of the Federal Rules of Civil Procedure requires that court filings referring to such information include only the last four digits of a person's Social Security number, the year of a person's birth, and the minor child's initials. Fed. R. Civ. P. 5.2(a)(1) - (3). A person who fails to redact such information or file it under seal waives the protections of Rule 5.2 as to his or her own information. *See* Fed. R. Civ. P. 5.2(h). Because the filings contain information concerning Plaintiff's minor children, the Court has directed the Clerk of Court to restrict electronic access to those submissions to a "case participant-only" basis. Plaintiff must comply with Rule 5.2(a) when submitting any documents in the future.

**STANDARD OF REVIEW**

The Court must dismiss an IFP complaint, or portion thereof, that is frivolous or malicious, fails to state a claim on which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e)(2)(B); *see Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998). The Court must also dismiss a complaint when the Court lacks subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). While the law mandates dismissal on any of these grounds, the Court is obliged to construe *pro se* pleadings liberally, *Harris v. Mills*, 572 F.3d 66, 72 (2d Cir. 2009), and interpret them to raise the "strongest [claims] that they *suggest*," *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (internal quotation marks and citations omitted) (emphasis in original).

**BACKGROUND**

Plaintiff, who currently resides in Jersey City, New Jersey, brings claims arising from a dispute with his landlord, his wife, and her family concerning the tenancy of the premises of 4 East 1st Street, Apt. 2D in Manhattan. Named as defendants are (1) Extra Place Associates, LP ("Extra Place"), Plaintiff's landlord; (2) Thoai Ngo, Plaintiff's wife's father ("Defendant Thoai"); (3) Ngoc Lam, Plaintiff's wife's mother; (4) Trinh Ngo, Plaintiff's wife ("Defendant Trinh"); (5) Gutman, Mintz, Baker & Sonnefeldt, LLP, a law firm that represented Extra Place; (6) Jeffrey R. Stern, an attorney employed by Gutman, Mintz, Baker & Sonnefeldt, LLP; (7) Arianna Gonzalez-Abreu, an attorney employed by Gutman, Mintz, Baker & Sonnefeldt, LLP; (8) Sean A. Zvi, an attorney employed by Gutman, Mintz, Baker & Sonnefeldt, LLP; (9) Phipps Houses Services, Inc., the managing agent of Plaintiff's building; and (10) Judge Frances S. Ortiz, a judge of the Civil Court of the City of New York, County of New York, Housing Part ("Housing Court"). Plaintiff seeks damages from Defendants for harms allegedly caused in the past seven years in violation of Article 121 of the UCMJ, 10 U.S.C. § 921,

including "murder, grand larcenies, and the wrongful appropriation of [his] properties." (ECF 1, ¶ 1.)[2]

The following information is taken from the complaint and attached documents.[3] In 2005, Plaintiff rented the premises at issue, a rent-controlled two-bedroom apartment, and in June 2006, as a newlywed, he moved into the apartment with his parents and his new wife, Defendant Trinh. In 2007, Plaintiff's son H.T. was born; in November 2012, Plaintiff's father died of natural causes; and in November 2015, Defendant Thoai, Plaintiff's father-in-law, arrived from Vietnam and moved into the apartment, sleeping in the living room. Within three months, however, Defendant Thoai began an "unconscionable plan of getting rid of Plaintiff's old mother and then Plaintiff physically," so that he could live in the apartment with his daughter, grandson, and other family members who would be coming from Vietnam. (*Id.* ¶ 21.) According to Plaintiff, in the next year, Defendant Thoai

> successfully murdered by torturing mentally and physically Plaintiff's mother Huong Trieu to death by false imprisonment and deprivation of her right to privacy and use of the toilet when necessary. For instance, he would stay naked in the living room, and as such Plaintiff's mother would not be able to go to the living room but stay locked in her room for three months straight until she died. He would also run to the only toilet in the apartment to occupy it each time he suspected that [Plaintiff's] mother would need to use it. He would stay there for hours and as such Plaintiff's mother had to suffer most miserably when she had to hold her urine inside her too long and it would go back to her blood vein.

(*Id.* ¶ 22.) After Plaintiff's mother died in February 2016, Defendant Thoai moved into her former bedroom.

---

[2] The Court quotes from the complaint verbatim, and all spelling, grammar, and punctuation are as in the original, unless noted otherwise.

[3] Plaintiff attaches to the complaint documents from several eviction actions before the Housing Court and other matters before the Family Court of the State of New York, County of New York.

In the summer of 2016, Plaintiff's second son J.T. was born. At about that time, Plaintiff believes that his wife and her father began a sexual relationship, "as a means to torture Plaintiff mentally for the purpose of forcing [him] to divorce Defendant Trinh, move out, [and] work and pay child support." (*Id*. ¶ 25.) In April 2017, Defendant Lam, Defendant Thoia's wife and Defendant Trinh's mother, arrived from Vietnam and moved into the apartment. Her presence did not stop Defendants Thoai and Trinh from continuing their relationship. In addition, Defendant Lam "abused the children by hitting them corporally from time to time when she deemed it appropriate to allegedly discipline them, as a grandma the Vietnamese traditional way." (*Id*. ¶ 27.)

In October 2017, Defendant Thoai and Trinh incited H.T. to hit Plaintiff in the back, causing Plaintiff "to turn back and by reflex slapped [H.T.] slightly on the cheek." (*Id*. ¶ 28.) Although H.T. did not "suffer great pain or any injury," Defendant Trinh called the police and had Plaintiff arrested. (*Id*.) Plaintiff spent four days in jail, but the criminal case against him was dismissed two years later and the records sealed. Defendant Trinh, however, obtained an order of protection on behalf of the children against him, and "constructively evicted" him from the apartment. (*Id*.) Plaintiff "became homeless and put under extreme emotional distress for about six long years to date, without end in sight." In February 2018, Defendant Extra Place "unlawfully" recognized Defendant Trinh as a "lawful lessee" of the apartment, and allowed her to add her father, mother, and sister as legal occupants of the apartment. (*Id*. ¶ 29.)

In 2019, Plaintiff commenced two summary proceedings against Defendants Thoai and Lam in Housing Court, seeking to evict them from the apartment. While Plaintiff's lawsuits were pending, Defendant Extra Place commenced a holdover proceeding against Plaintiff, Defendant Trinh, and their children in the same Housing Court, with "patently false allegation[s]" that

4

Plaintiff had violated the Violence against Women Act ("VAWA"), 34 U.S.C. § 12491(a)(3)(J). (*Id*. ¶ 31.) Plaintiff asserts that the "foregoing proceeding is undisputedly baseless and frivolous in that the Family Court not the Housing Court has subject-matter jurisdiction to adjudicate any domestic violence issue." (*Id*. ¶ 32.) Defendant Extra Place, along with its attorneys and law firm, had filed the petition to assist Defendants Thoai and Trinh and to "inflict extreme emotional distress on Plaintiff, and/or to rob Plaintiff herein of [his] leased premises under color of law by false pretenses." (*Id*.)

On October 27, 2022, after a trial, Plaintiff believed that Judge Ortiz would rule in his favor, but on December 21, 2022, she issued a decision which Plaintiff believes was "undisputedly written by Extra's attorneys." (*Id*. ¶ 35.) The decision "found 'credible' Defendant's Trinh Ngo's allegations regarding [Plaintiff's] VAWA violation, while [Plaintiff's] opposite testimony 'incredible.'" (*Id*.) Judge Ortiz determined that Defendant Trinh should remain a leaseholder of the apartment, and issued a warrant of eviction against Plaintiff. (ECF 1-1, at 37.)

Plaintiff filed a motion for reconsideration, and on March 14, 2023, Judge Ortiz issued a second decision which Plaintiff perceives as the court agreeing with him and finding that it "erred" when it decided in favor of Extra Place. (ECF 1 ¶ 37.) In the decision, however, Judge Ortiz denied Plaintiff's motion for reconsideration, ordered issuance of an eviction warrant, and awarded Extra Place "final judgment of possession." (ECF 1-1, at 120-121.)

On or about May 1, 2023, Plaintiff "suffered a grave stroke," which he believes was caused by the "mental pressure that had been imposed on [him] by Defendants herein since December 2015." (ECF 1 ¶ 38.)

5

Plaintiff brings this action seeking damages for Defendants' alleged "illegal occupation of [his] residence," and them "having conspired to intentionally inflict extreme emotional distress upon Plaintiff herein and his loved ones." (*Id*. at 8-9.)

## DISCUSSION

**A.     Claims under the Uniform Code of Military Justice ("UCMJ")**

Plaintiff brings this complaint citing to Article 121 of the UCMJ, which lays out the potential charges for a service member of the United States military that unlawfully takes possession of another person's property without their consent. *See* 10 U.S.C. § 921. The UCMJ defines various military orders, regulations, offenses, and the consequences for violations of those standards by members of the armed forces of the United States. Because Plaintiff does not allege that his claims arise from matters relating to the military, the UCMJ is not applicable to this case.

**B.     The *Rooker-Feldman* Doctrine**

Plaintiff brings this action seeking relief for the termination of his lease and his eviction from the apartment he shared with his wife, children, and his wife's family. Because Plaintiff's lease was terminated and he was evicted as a result of a holdover proceeding in Housing Court, his claims are barred under the *Rooker-Feldman* doctrine. The doctrine "established the clear principle that federal district courts lack jurisdiction over suits that are, in substance, appeals from state-court judgments." *Sung Cho v. City of New York*, 910 F.3d 639, 644 (2d Cir. 2018) (citation omitted). Because "federal district courts are granted original − and not appellate − jurisdiction, cases that function as de facto appeals of state-court judgments are therefore jurisdictionally barred." *Id*. Under the *Rooker-Feldman* doctrine, a federal district court lacks authority to review a final state court order or judgment where the plaintiff seeks relief that invites the federal district court to reject or overturn such a final state court order or judgment.

*See Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291-92 (2005); *Dorce v. City of New York*, 2 F.4th 82, 101 (2d Cir. 2021) ("[The *Rooker-Feldman* doctrine] bars federal district courts from hearing cases that in effect are appeals from state court judgments, because the Supreme Court [of the United States] is the only federal court with jurisdiction over such cases." (citing 28 U.S.C. § 1257)); *Kropelnicki v. Siegel*, 290 F.3d 118, 128 (2d Cir. 2002) ("The [*Rooker-Feldman*] doctrine reflects the principle set forth in 28 U.S.C. § 1257 that the Supreme Court [of the United States] is the only federal court that has jurisdiction to review state court judgments, unless otherwise provided by Congress, *see, e.g.,* 28 U.S.C. § 2254 (*habeas corpus* review)." (citation omitted)).

District court review of claims is barred under the *Rooker-Feldman* doctrine when four requirements are met: (1) the plaintiff lost in state court; (2) the plaintiff complains of injuries caused by a state court judgment; (3) the plaintiff invites district court review and rejection of the state court judgment; and (4) the state court judgment was rendered before the district court proceedings commenced. *Dorce*, 2 F.4th at 101 (internal quotation marks and citation omitted).

Plaintiff appears to challenge the Housing Court's decision that allowed his landlord to evict him from the Manhattan apartment. He asserts that Defendants committed "grand larcenies[] and wrongful appropriation of [his] properties" through the state court eviction action. (ECF 1 ¶ 1.) Plaintiff, who lost in the eviction proceedings, is essentially complaining of the results of those proceedings and is seeking to overturn the Housing Court's decision that terminated his lease for the apartment. The relief Plaintiff seeks would essentially require this Court to void the state court decision in the eviction case, which is foreclosed by the *Rooker-Feldman* doctrine. *See Dorce*, 2 F.4th at 104 (*Rooker-Feldman* forecloses a court from voiding a state court judgment). The Court therefore dismisses Plaintiff's claims seeking to overturn the

Housing Court eviction proceeding and damages for the termination of his lease and eviction from the apartment. All of Plaintiff's claims concerning the lease and his eviction barred under the *Rooker-Feldman* doctrine, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3); *Exxon Mobil Corp.*, 544 U.S. at 291.

### C.     Leave to Amend Denied

District courts generally grant a *pro se* plaintiff an opportunity to amend a complaint to cure its defects, but leave to amend is not required where it would be futile. *See Hill v. Curcione*, 657 F.3d 116, 123–24 (2d Cir. 2011); *Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). Because the defects in Plaintiff's complaint cannot be cured with an amendment, the Court declines to grant Plaintiff leave to amend his complaint.

## CONCLUSION

The Court dismisses Plaintiff's complaint under the *Rooker-Feldman* doctrine, for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 12(h)(3). All other pending matters in this case are terminated.

The Clerk of Court is directed to continue limiting electronic access to Plaintiff's complaint, IFP application, and motion for summary judgment (ECF 1, 2, 4) to a "case-participant only" basis.

The Court certifies under 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith, and therefore IFP status is denied for the purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

The Clerk of Court is directed to enter judgment in this case.

SO ORDERED.

Dated:   January 8, 2024
         New York, New York

                                         /s/ Laura Taylor Swain
                                         LAURA TAYLOR SWAIN
                                         Chief United States District Judge